# United States Court of Appeals
## For the First Circuit

No. 21-1448

GERSON ANTONIO HERNANDEZ-MARTINEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta and Howard, Circuit Judges,
and Walker,* District Judge

Randy Olen on brief for appellant.
Brian Boynton, Acting Assistant Attorney General, Civil
Division, Jessica E. Burns, Senior Litigation Counsel, Office of
Immigration Litigation, and Edward C. Durant, Trial Attorney,
Office of Immigration Litigation, on brief for respondent.

February 2, 2023

---

\* Of the District of Maine, sitting by designation.

**KAYATTA**, <u>Circuit Judge</u>.  In the wake of a police-aided assault that left him hospitalized, Petitioner Gerson Antonio Hernandez-Martinez fled to the United States, where he sought asylum, withholding of removal, and relief under the Convention Against Torture (CAT).  Finding Hernandez-Martinez credible, the Immigration Judge (IJ) nevertheless denied all three forms of relief.  After the Board of Immigration Appeals (BIA) affirmed the IJ's decision, Hernandez-Martinez timely petitioned for judicial review.  For the following reasons, we find that the record provides the requisite support for the IJ's conclusions that Hernandez-Martinez failed to establish eligibility for asylum or withholding of removal.  At the same time, we vacate the order denying CAT relief.  Our reasoning follows.

## I.

Hernandez-Martinez is a Guatemalan citizen who entered the United States without inspection in 2014.  Until shortly before his departure, he had a good life in Guatemala, and made approximately $5,000 per month between his taxi business and a job with Coca-Cola.

In March 2014, Hernandez-Martinez was on his way to work when two men approached him, demanding money and threatening to kill him if he did not pay.  Hernandez-Martinez did not know who the men were.  The men told him that they knew where he lived and

- 2 -

would harm him or his wife if he did not comply. They also instructed him not to go to the police.

Hernandez-Martinez went to the police later that day. Two police officers told Hernandez-Martinez not to be afraid because they would "take matters into their own hands," and they offered to drive him home. Instead, they delivered him to the men who had threatened him earlier. The men hit Hernandez-Martinez in the face, cut his waist with a knife, burned his right foot with motorcycle exhaust, dragged him, repeated their threats, and beat him senseless. The police appeared to know his assailants and laughed while the men were assaulting him. Hernandez-Martinez recovered consciousness in a hospital, where he stayed for three or four days. When he had sufficiently recovered, he promptly fled to the United States to join his wife and then four- or five-year-old son, who had already made the journey.

Placed in removal proceedings in 2014, Hernandez-Martinez conceded his removability but requested asylum, withholding of removal, and deferral of removal under the CAT. He argued that he qualified for asylum and withholding of removal because he had faced past persecution -- and feared future persecution -- based on his membership in a particular social group, which he defined as "business owners in Guatemala who have a high profit." See 8 U.S.C. § 1101(a)(42)(A) (defining the term "refugee" to encompass a person subject to persecution based on

"membership in a political social group"). The IJ did not hold a merits hearing on Hernandez-Martinez's claims until March 8, 2019. The government makes no claim that Hernandez-Martinez (or his wife or child) committed any crimes during the five years between his entry and his 2019 hearing.

The IJ found Hernandez-Martinez to be credible, but denied his requests for relief. First, she stated that his past abuse at the hands of his police-supported extortioners did not "rise above unpleasantness, harassment, and even basic suffering," quoting Rebenko v. Holder, 693 F.3d 87, 92 (1st Cir. 1992). The IJ made no specific finding as to the prospects for future abuse should Hernandez-Martinez return to Guatemala. Instead, she devoted the bulk of her reasoning to explaining why, in any event, he had not established a nexus between his assault and his membership in a cognizable particular social group. She explained that his proposed social group lacked "particularity" and had no limitations based on age or background, and "[t]here was no evidence that Guatemalan society perceives, considers, or recognizes 'business owners in Guatemala who have a high profit' as a distinct social group." Thus, he did not qualify for asylum.

The IJ next determined that Hernandez-Martinez's withholding of removal claim must fail a fortiori because the standard is more stringent than that for asylum. Finally, the IJ rejected the CAT claim, albeit only by stating that "[n]either the

- 4 -

Respondent's testimony nor other evidence in the record supports the conclusion that it is more likely than not that the Respondent would be singled out and tortured by, or with the acquiescence of, the government of Guatemala, either by their active participation in torture, or by their willful blindness to the acts of private individuals."

Hernandez-Martinez appealed the denial of his claims to the BIA. The BIA affirmed without issuing an opinion. Hernandez-Martinez then petitioned this Court for review.

## II.

"Where the BIA summarily affirms the IJ's asylum determination, as is the case here, we review the IJ's decision as if it were the decision of the BIA." Larios v. Holder, 608 F.3d 105, 107 (1st Cir. 2010). In so doing, we review factual determinations under the "substantial evidence" standard. Gomez-Abrego v. Garland, 26 F.4th 39, 45 (1st Cir. 2022). "[W]e accept the findings 'as long as they are supported by reasonable, substantial and probative evidence on the record considered as a whole.'" Id. (quoting Aguilar-De Guillen v. Sessions, 902 F.3d 28, 32 (1st Cir. 2018)). Put another way, "[a]n agency's determination of a fact-driven issue may not be set aside unless the evidence compels a contrary determination." Moreno v. Holder, 749 F.3d 40, 43 (1st Cir. 2014). We review questions of law de novo. Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004).

**A.**

**1.**

A petitioner for asylum must demonstrate persecution or a well-founded fear of persecution based on a statutorily protected ground: race, nationality, religion, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). Persecution entails "more than ordinary harassment, mistreatment, or suffering." Ordonez-Quino v. Holder, 760 F.3d 80, 87 (1st Cir. 2014) (quoting Lopez de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007)). "To constitute persecution, abuse 'must have reached a fairly high threshold of seriousness, as well as some regularity and frequency.'" Ivanov v. Holder, 736 F.3d 5, 11 (1st Cir. 2013) (quoting Rebenko, 693 F.3d at 92). "An important factor in determining whether [mistreatment amounts to persecution] is whether the mistreatment can be said to be systematic rather than reflective of a series of isolated incidents." Touch v. Holder, 568 F.3d 32, 38 (1st Cir. 2009) (alteration in original) (quoting Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005)). Additionally, the petitioner must establish that the protected ground "was or will be at least one central reason for" the persecution. 8 U.S.C. § 1158(b)(1)(B)(i). Here, Hernandez-

Martinez claimed persecution based on his membership in a particular social group.[1]

The IJ rejected Hernandez-Martinez's claim for asylum on two grounds. First, she found that the abuse Hernandez-Martinez suffered did not constitute persecution because the harm inflicted on him did not "rise above the level of unpleasantness, harassment, and even basic suffering." Second, she determined that Hernandez-Martinez had not sufficiently established that he was persecuted on account of belonging to a cognizable social group. As we will explain, we rely only on the latter ground in affirming the denial of asylum.

**2.**

We must defer to the BIA's interpretation of the term "particular social group" as long as it is reasonable. See Elien v. Ashcroft, 364 F.3d 392, 397 (1st Cir. 2004). That is, we will uphold the BIA's interpretation if it is "based on a 'permissible construction of the statute.'" Chavez v. Garland, 51 F.4th 424, 433 (1st Cir. 2022) (quoting Cantarero v. Holder, 734 F.3d 82, 85 (1st Cir. 2013)).

The BIA has held that an applicant for asylum or withholding of removal based on membership in a particular social

---

[1] Hernandez-Martinez also argued before the IJ that he was persecuted based on his political opinion, but the IJ found he had not demonstrated persecution based on political opinion, and he does not revive that argument on appeal.

group must establish that "the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." Matter of M-E-V-G, 26 I. & N. Dec. 227, 237 (B.I.A. 2014). Our circuit has likewise "accepted that a legally cognizable social group is one whose members share a common, immutable characteristic that makes the group socially visible -- that is, generally recognizable in the community -- and sufficiently particular to define the group's membership." Mayorga-Vidal v. Holder, 675 F.3d 9, 14 (1st Cir. 2012). Additionally, we have "rejected proposed social groups based solely on perceived wealth, even if signaling an increased vulnerability to crime, regardless of why one is perceived as wealthy." Beltrand-Alas v. Holder, 689 F.3d 90, 94 (1st Cir. 2012) (cleaned up); see also López-Pérez v. Garland, 26 F.4th 104, 112 (1st Cir. 2022); Garcia-Callejas v. Holder, 666 F.3d 828, 830 (1st Cir. 2012) (collecting both First Circuit cases and BIA precedent rejecting social groups based on perceived wealth).

Here, the IJ concluded that Hernandez-Martinez's proposed social group "failed" because it lacked the required particularity and social distinction within Guatemala. The group lacked particularity because it could have included individuals of any age or background. And the IJ saw no evidence in the record

- 8 -

that indicated that Guatemalan society recognizes or perceives business owners with a high profit as a distinct group.

Hernandez-Martinez concedes that "wealth alone may be insufficient" to define a particular social group, but argues that his "affluence is combined with his highly visible business ownership." He points out that a group consisting of business owners could not, for example, include children. While this may be true, Hernandez-Martinez's proposed group classification remains quite broad and partially based on wealth. Especially because we have previously found that wealth alone cannot define a particular social group, we see no reason to upset the IJ's finding here where the only additional limiting suggestion -- visible business owners -- could include people of many ages and backgrounds, and by its terms is ambiguous. See Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010); see also Sicaju-Diaz v. Holder, 663 F.3d 1, 4 (1st Cir. 2011) (wealthy Guatemalans returning from the United States was not a cognizable social group); Macedo Templos v. Wilkinson, 987 F.3d 877, 882-83 (9th Cir. 2021) (holding that proposed social group of Mexican wealthy business owners who refused extortion demands lacked particularity).

Hernandez-Martinez also contends that his proposed group is socially distinct, because "Guatemalan society perceives successful business owners as a distinct social group, easily

- 9 -

identifiable from the vast majority of Guatemalan society, much of which lives in poverty." He does not, however, cite anything in the record to support this claim. We therefore cannot conclude that the IJ's determination that wealthy business owners in Guatemala are not a sufficiently distinct group was reversible error. See Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir. 2015) (rejecting a proposed social group, in part because petitioner offered no evidence of the existence of an otherwise broadly defined group, "aside from his own assertion").

For the foregoing reasons, Hernandez-Martinez has not met his burden to overturn the IJ's determination that the proposed particular social group to which he claims to belong is not cognizable. We therefore conclude there is no basis to reverse the IJ's denial of asylum.

## B.

We must reach the same conclusion with respect to the denial of withholding of removal. "To petition successfully for withholding of removal, an alien must show that, if returned to his homeland, he would more likely than not be subjected to persecution on account of a statutorily protected ground." Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009). Given the probability requirement, "a claim for withholding of removal 'imposes a more stringent burden of proof on an alien than does a counterpart claim for asylum.'" Rivera-Coca v. Lynch, 844 F.3d 374, 378 (1st Cir.

2016) (internal quotation marks omitted) (quoting Morgan v. Holder, 634 F.3d 53, 60 (1st Cir. 2011)). Because Hernandez-Martinez failed to establish a claim for asylum because he did not establish a well-founded fear of persecution on account of a protected ground, his claim for withholding of removal also fails. Id.

### C.

We turn now to Hernandez-Martinez's CAT claim. Our holding affirming the rejection of the asylum claim for lack of the requisite nexus between harm and a protected group does not dictate the outcome of this claim, because a successful CAT claim requires no proof of such a nexus. Rashad v. Mukasey, 554 F.3d 1, 6 (1st Cir. 2009) (citing Romilus, 385 F.3d at 8). Rather, in order to be eligible for protection under the CAT, a petitioner must show that he would more likely than not be tortured by or with the acquiescence of a government official if sent to the country of removal. Aldana-Ramos v. Holder, 757 F.3d 9, 19 (1st Cir. 2014). In determining whether it is more likely than not that a petitioner will be tortured with government approval,

> all evidence relevant to the possibility of future torture shall be considered, including but not limited to:
>
> > (i) Evidence of past torture inflicted upon the applicant;
> >
> > (ii) Evidence that the applicant could relocate to a part of the country of

- 11 -

removal where he or she is not likely to be tortured;

(iii) Evidence of gross, flagrant, or mass violations of human rights within the country, where applicable; and

(iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3). Although past torture does not create a presumption of future torture, it is relevant to the question of whether the petitioner is more likely than not to face future torture. Id.; see also Romilus, 385 F.3d at 9 (analyzing past incidents in determining likelihood of future torture).

Adjudicating a CAT claim requires making findings of fact, "e.g., whether a person is likely to suffer a particular harm and the role of the foreign government in causing or allowing that harm," and deciding questions of law, "e.g., whether such harm rises to the level of torture" and whether government involvement renders the harm cognizable under the CAT. DeCarvalho v. Garland, 18 F.4th 66, 73 (1st Cir. 2021). Whether a particular act constitutes torture is a legal conclusion that we review de novo, though with reasonable deference to the agency's interpretation. Gourdet v. Holder, 587 F.3d 1, 5 (1st Cir. 2009), abrogated on other grounds by Nasrallah v. Barr, 140 S. Ct. 1683 (2020); see also Ali v. Garland, 33 F.4th 47, 54 (1st Cir. 2022).

The government posits an array of reasons for affirming the rejection of Hernandez-Martinez's CAT claim. But we must base any affirmance on grounds adopted by the BIA (or, here, the IJ). See Rosales Justo v. Sessions, 895 F.3d 154, 162 & n.7 (1st Cir. 2018) (explaining that we "conduct de novo review only of the justifications provided by the BIA," and noting that such review "is different from de novo review of district court decisions, where we can affirm for any reason supported by the record"). Our charge is not to look through the record searching for reasoning that the IJ might have offered, but did not. Rather, we "judge the action of [the BIA] based only on reasoning provided by the agency, not based on grounds constructed by the reviewing court." Mihaylov v. Ashcroft, 379 F.3d 15, 21 (1st Cir. 2004) (alteration in original) (quoting Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2001)).

The IJ's reasons are not at all clear. She more or less simply stated the elements of a CAT claim and asserted that Hernandez-Martinez did not establish those elements without specifying which elements were found wanting, or why.[2] In addressing the asylum claim, the IJ did comment on the severity of

---

[2] The IJ stated only: "Neither the Respondent's testimony nor other evidence in the record supports the conclusion that it is more likely than not that the Respondent would be singled out and tortured by, or with the acquiescence of, the government of Guatemala, either by their active participation in torture, or by their willful blindness to acts of private individuals."

harm inflicted on Hernandez-Martinez, stating that the abuse he suffered did not "rise above the level of unpleasantness, harassment, and even basic suffering." We agree with the government that were this a supportable description of the harm inflicted, it would not support a CAT claim. We disagree, though, that the facts found support such a description. More to the point, as a matter of law we reject the implicit claim that the harm visited upon Hernandez-Martinez was not severe enough to qualify as torture.

Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" to obtain information, to punish, to intimidate or coerce, "or for any reason based on discrimination of any kind." 8 C.F.R. § 208.18(a)(1). Because we read the IJ's finding to speak only to severity, that is where we focus our attention. The regulations implementing the CAT further speak to the necessary degree of severity by explaining that torture is "an extreme form of cruel and inhuman treatment," that must be "specifically intended to inflict severe physical or mental pain or suffering." Id. § (a)(2), (5). The regulations do not speak specifically to whether torture must extend over a certain duration or reach a certain frequency. They do state, though, that "[t]orture is defined as any act," which implies that a single occurrence is enough. 8 C.F.R. § 1208.18(a)(1) (emphasis added); see also

- 14 -

§ 1208.18(5), (6) ("In order to constitute torture, <u>an</u> act must . . . .); <u>Niz-Chavez</u> v. <u>Garland</u>, 141 S. Ct. 1474, 1481-82 (2021) (reading statutory term defined in singular ("a notice") to require a single document); Deborah E. Anker, <u>Law of Asylum in the United States</u> § 7.20 (2022 ed.) ("It is possible, pursuant to the Torture Convention, for a single act to constitute torture . . . ."). Certainly the government does not contend otherwise, so neither shall we.

Here, the treatment that Hernandez-Martinez endured was clearly severe enough to constitute torture. The assailants not only beat Hernandez-Martinez senseless; they also sliced his waist with a knife and intentionally burned the flesh on his foot as they repeated their threats, sending him unconscious to a hospital where he remained for three to four days. Even granting "appropriate deference to the agency's interpretation" on this legal question, as we must, <u>see</u> <u>Ali</u>, 33 F.4th at 54 (quoting <u>Ramírez-Pérez</u> v. <u>Barr</u>, 934 F.3d 47, 50 (1st Cir. 2019)), we find that the record compels the conclusion that Hernandez-Martinez's experience did "rise above the level of unpleasantness, harassment, and even basic suffering." More to the point, the intentionally inflicted harm was the result of an extreme form of cruel and inhuman treatment intended to inflict severe physical pain and suffering. That is to say, it was severe enough to qualify as torture.

The BIA itself has recognized that intentionally burning a person with a cigarette can constitute torture. In re J-E, 23 I. & N. Dec. 291, 301-02 (B.I.A. 2002); In re G-A, 23 I. & N. Dec. 366, 370 (B.I.A. 2002); see also P. Kooijmans (Special Rapporteur on Torture), Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, ¶ 119, U.N. Doc. E/CN.4/1986/15 (Feb. 19, 1986) (listing burns among nonexclusive methods of torture). Courts have recognized this as well. See Rodriguez-Molinero v. Lynch, 808 F.3d 1134, 1136 (7th Cir. 2015) ("agree[ing]" that petitioner "was tortured by [people] who entered his hotel room, burned him with cigarettes, beat him, and stabbed him with an ice pick"); Al-Saher v. INS, 268 F.3d 1143, 1147 (9th Cir. 2001) (burning with cigarettes while detained constituted torture and was "specifically intended by officials to inflict severe physical pain"). Intentionally burning the flesh of a person's foot while cutting the person at the waist and beating him unconscious is severe enough to be distinguishable from the lesser forms of cruel, inhuman, or degrading treatment that do not amount to torture.

In arguing to the contrary, the government relies on a two-step argument. First, it points to cases in which we have affirmed findings that the harm inflicted on a petitioner did not constitute persecution.[3] Second, it assumes that if harm is not

---

[3] See Gao v. Barr, 950 F.3d 147, 152-53 (1st Cir. 2020); García-Cruz v. Sessions, 858 F.3d 1, 6-7 (1st Cir. 2017); Vasili

- 16 -

sufficiently severe to constitute persecution it cannot be sufficiently severe to constitute torture.[4]  But this argument fails at the first step because in none of the cited cases did we find that conduct equally or more severe than that found here fell short of the severity required to constitute persecution.  In some of those cases, the persecution claims failed because the harm did not "occur[] with some regularity and frequency" -- a requirement for persecution that is separate from the severity, or "seriousness," of the harm.  Vasili v. Holder, 732 F.3d, 83, 89 (1st Cir. 2013) (cleaned up) (quoting Alibeaj v. Gonzales, 469 F.3d 188, 191 (1st Cir. 2006)); see Anacassus v. Holder, 602 F.3d 14, 20 (1st Cir. 2010) ("[I]solated beatings, even when rather severe, do not establish systematic mistreatment needed to show persecution." (emphasis added) (quoting Wiratama v. Mukasey, 538 F.3d 1, 7 (1st Cir. 2008))).[5]  These cases therefore have

---

v. Holder, 732 F.3d 83, 89-90 (1st Cir. 2013); Barsoum v. Holder, 617 F.3d 73, 79-80 (1st Cir. 2010); Anacassus v. Holder, 602 F.3d 14, 19-20 (1st Cir. 2010); Lumataw v. Holder, 582 F.3d 78, 91 (1st Cir. 2009); Touch v. Holder, 568 F.3d 32, 39-40 (1st Cir. 2009); Kho v. Keisler, 505 F.3d 50, 57-58 (1st Cir. 2007); Bocova v. Gonzales, 412 F.3d 257, 263-64 (1st Cir. 2005).

    [4]  The government cites Nuru v. Gonzales, 404 F.3d 1207, 1224 (9th Cir. 2005) ("In finding that Nuru was tortured, we also necessarily determined that the acts committed by the military rose to the level of persecution. . . .  This is because torture is more severe than persecution and the standard of proof for the CAT claim is higher than the standard of proof for an asylum claim.").

    [5]  See Anacassus, 602 F.3d at 20 ("single, isolated beating" was not "systematic" and was therefore insufficient to constitute

- 17 -

little bearing on whether harm is severe enough to constitute torture. And in the remaining persecution cases the government cites, the harm found wanting was clearly less severe than the harm inflicted on Hernandez-Martinez (and the claims may have had had other deficiencies as well).[6]

The government comes closest with Barsoum v. Holder, where the petitioner's car was pushed off the road into a trash container and he suffered "injuries to the face and head, requiring hospitalization, a blood transfusion, and plastic surgery." 617 F.3d 73, 77 (1st Cir. 2010). The court affirmed that this incident, along with other nonviolent incidents, constituted neither persecution nor torture. Id. at 79-80. But while the injuries in Barsoum are unquestionably serious, pushing a car off

---

persecution); Bocova, 412 F.3d at 263 (affirming BIA determination that petitioner had not been persecuted where "the record here shows only two incidents, over an eight-year span," and "there is little in the record to suggest that the petitioner was systematically targeted for abuse").

[6] See Gao, 950 F.3d at 152-53 (no evidence of any injuries during detention incident); García-Cruz, 858 F.3d at 6-7 (threats with no physical harm); Vasili, 732 F.3d at 90 (no evidence about nature and extent of petitioner's injuries from beating); Lumataw, 582 F.3d at 91 (petitioner "received only a single threat, unaccompanied by physical harm"); Touch, 568 F.3d at 39-40 (petitioner "did not suffer serious or permanent injuries" from being beaten and forced to drink wastewater, and single threat was unaccompanied by physical harm); Butt, 506 F.3d 86 at 90-91 (threats and stalking with "no actual physical harm"); Kho, 505 F.3d at 57-58 (non-violent mugging, verbal insult, looting incident where petitioner was hit once, burning of two churches petitioner attended while he was absent).

the road does not have the "specific[] inten[t] to inflict severe physical or mental pain or suffering" required for an act to constitute torture, 8 C.F.R. § 1208.18(a)(5). The car crash could instead be an example of "[a]n act that results in unanticipated or unintended severity of pain and suffering," which "is not torture." Id. Here, by contrast, Hernandez-Martinez's assailants intentionally cut him, burned him, and beat him senseless, all toward the end of inflicting severe pain and injury to bend him to their will, and seemingly as punishment for not previously acceding to their demands.

To summarize, we hold that the harm inflicted in the past on Hernandez-Martinez clearly satisfied the severity element of torture as defined for purposes of adjudicating a claim for relief under the CAT. We leave it to the BIA or the IJ to determine on remand in the first instance whether Hernandez-Martinez's experience otherwise met the definition of past torture (e.g., whether it was committed by or with the acquiescence of government officials), and if so, whether Hernandez-Martinez has otherwise satisfied the requirements for protection under the CAT.

## III.

For the foregoing reasons, we deny Hernandez-Martinez's petition as to his asylum and withholding of removal claims, but grant the petition in part by vacating the rejection of his CAT

claim and remanding for further consideration of that claim consistent with this opinion.