# United States Court of Appeals
## For the First Circuit

No. 22-1815

JOSE DAVID SANCHEZ; SARA RIVAS-ALVARENGA; J.S.R,

Petitioners,

v.

MERRICK B. GARLAND, United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Lynch, and Montecalvo,
<u>Circuit Judges</u>.

<u>Kevin P. MacMurray</u> and <u>MacMurray & Associates</u> for petitioners.
<u>Karen L. Melnik</u>, Senior Trial Attorney, Office of Immigration Litigation, <u>Brian Boynton</u>, Principal Deputy Assistant Attorney General, Civil Division, and <u>Michael C. Heyse</u>, Senior Litigation Counsel, Office of Immigration Litigation, for respondent.

July 14, 2023

**LYNCH**, **Circuit Judge**. Jose David Sanchez, Sara Rivas-Alvarenga, and their minor son J.S.R. petition for review of a decision of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") order denying their applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A), as well as relief under the Convention Against Torture ("CAT").

The BIA held that there was no error in the IJ's holdings that (1) the petitioners did not meet their burden to establish a well-founded fear of persecution and (2) the petitioners did not bear their burden as to the two separate particular social groups they claimed. The IJ first determined that "Salvadoran business owners perceived as wealthy" was not a valid particular social group. Second, the IJ accepted that a nuclear family can be a valid particular social group under certain circumstances. The IJ determined that there was no nexus to that particular social group because the petitioners failed to establish that their family membership was one central reason for their experiences in El Salvador.

Because substantial evidence supports the IJ's factual determination that the petitioners did not meet their burden as to the two separate particular social groups they claimed, and the BIA committed no errors of law in affirming that ruling, we deny

the petition for review of the petitioners' asylum and withholding of removal claims. Having failed to develop any argument of error with respect to the denial of their claim for CAT relief on appeal, the petitioners waive any argument regarding CAT relief, and we deny that portion of their petition.

## I.

## A.

We recount the facts as they appeared in the record before the IJ. Lead petitioner Jose David Sanchez is a citizen of El Salvador. Sanchez left El Salvador on March 1, 2014, entering the United States without inspection on or about March 17, 2014. Sanchez is married to Sara Rivas-Alvarenga, who originally remained in El Salvador with the couple's then-only child, J.S.R. (a citizen of El Salvador and a petitioner here). Rivas-Alvarenga and J.S.R. joined Sanchez in the United States in October 2016. The couple have another child who was born in the United States after the family's arrival and that child is a U.S. citizen. Rivas-Alvarenga also separately has a third child, an adult daughter who lives in El Salvador.

Before leaving El Salvador, Sanchez operated a successful fruit stand in San Martín de Porres. In his live testimony and sworn declaration, Sanchez stated that on two occasions in the span of a week in February 2014 an individual he knew to be a member of the Barrio 18 gang approached him at his

fruit stand and handed him a cell phone. On both occasions he spoke with an individual on the cell phone who demanded Sanchez pay $100 a week to the gang or else they would kill him. Sanchez did not testify as to when or how he was supposed to pay this money, nor did he describe any attempts to fulfill these threats (or prevent his departure) between the time he received them in mid-February and when he left the country on March 1, 2014. Sanchez testified he did not report these threats to the police because he knew people who had been killed after reporting extortion attempts to the police.

Sanchez testified that he was aware of several instances in which members of his family had been the targets of gang violence. According to his testimony, sometime in or prior to 2013 a gang had attempted to extort Sanchez's aunt, Maria Narcisa Sanchez De Moz. When Sanchez De Moz refused to comply, the gang kidnapped Juan Manuel Sanchez, Sanchez De Moz's son and Sanchez's cousin, whom Sanchez stated gang members tortured for almost a year before killing him. Sanchez stated that when Sanchez De Moz continued to refuse to pay extortion to the gang and filed a complaint with the local police, gang members killed her as well.

Sanchez stated that this knowledge, coupled with the demands he had received, motivated him to leave El Salvador on March 1, 2014. He arrived in the United States on or about March 17, 2014, and was served with notice to appear in removal

proceedings on April 3, 2014. Sanchez testified in 2019 that he had not received any threats from the Barrio 18 gang since arriving in the United States. He testified that he believes if he returns to El Salvador the gang will target him for extortion once again, including by threatening to kill him.

After Sanchez left, Rivas-Alvarenga remained in El Salvador with J.S.R. On August 19, 2015, Rivas-Alvarenga's brother was killed. Rivas-Alvarenga testified that she believes her brother was killed because he refused to pay extortion after receiving threats from local gang members.

Rivas-Alvarenga testified that on or about September 15, 2016, two-and-a-half years after Sanchez left the country, she received her first extortion threat. In her live testimony and sworn declaration, Rivas-Alvarenga described being approached from behind by an unknown man while on her way to the grocery store. She stated that the man pressed a weapon into her right side and demanded that she pay him $3,000. The man said he knew that Rivas-Alvarenga's husband was in the United States and that she had money. The man claimed to know where Rivas-Alvarenga lived and stated that he would come to her house in order to tell her how and when to pay the money. When Rivas-Alvarenga told the man that she was not able to pay that amount, he told her that if she did not pay he would kill her and her family just like he had

killed her brother. Rivas-Alvarenga's testimony did not specifically identify the man as a gang member.

Five days later, on September 20, 2016, Rivas-Alvarenga left El Salvador for the United States with her son. Her testimony did not describe any attempts to enforce the threat and demand for money before she left (or to prevent her departure). She crossed into the United States without inspection on or about October 5, 2016. She and her son were both served with notice to appear in removal proceedings on October 20, 2016. Rivas-Alvarenga testified in 2019 that, since arriving in the United States, she had not received any threats, nor had her adult daughter, who she testified lives "close" to her former home in San Martín.

**B.**

At their hearing before an IJ on April 2, 2019, Sanchez, Rivas-Alvarenga, and J.S.R. were represented by counsel. Sanchez and Rivas-Alvarenga testified as the sole witnesses and submitted sworn written declarations in support of their applications. The IJ found both Sanchez and Rivas-Alvarenga to be credible witnesses. The IJ denied their application for asylum, withholding of removal, and CAT relief, finding that (1) the petitioners' experiences in El Salvador fell below the level of harm necessary to establish persecution and (2) the petitioners had not met their burden as to the two separate particular social groups they claimed. The IJ concluded that the petitioners' first claimed group, "Salvadoran

- 6 -

business owners perceived as wealthy," was not a valid particular social group. The IJ accepted that the petitioners' second claimed group, membership in the Sanchez-Rivas nuclear family, could be a particular social group under certain circumstances. The IJ concluded that the petitioners had failed to establish their treatment in El Salvador occurred on account of their membership in that family. The BIA adopted the IJ's findings of fact and affirmed its legal conclusions, dismissing the appeal.

This timely petition for review followed.

## II.

We review the BIA's conclusions of law de novo and provide "some deference to the agency's expertise in interpreting both the statutes that govern its operations and its own implementing regulations." Cabrera v. Lynch, 805 F.3d 391, 393 (1st Cir. 2015). Where, as here, the BIA adopted the IJ's findings of fact, we review the IJ's findings for support by substantial evidence and "accept the [IJ's] factual findings . . . unless the record is such as to compel a reasonable factfinder to reach a contrary conclusion." Dorce v. Garland, 50 F.4th 207, 212 (1st Cir. 2022) (emphasis and omission in original) (quoting Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013)); see also INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Camara v. Holder, 725 F.3d 11, 14 (1st Cir. 2013). It is not enough that evidence may "support[] a conclusion contrary to that reached by

the [IJ]."  Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007) (emphasis omitted).

## III.

## A.

We begin with the petitioners' asylum application.  To succeed in their asylum application, the petitioners had the burden to "'demonstrate a well-founded fear of persecution on one of five protected grounds' -- race, religion, nationality, political opinion or membership in a particular social group." Paiz-Morales v. Lynch, 795 F.3d 238, 243 (1st Cir. 2015) (quoting Singh v. Holder, 750 F.3d 84, 86 (1st Cir. 2014)); see 8 U.S.C. §§ 1101(a)(42), 1158(b)(1).  The petitioners "'can meet this burden through proof of past persecution, which creates a rebuttable presumption of a well-founded fear of future persecution' or by demonstrating 'a well-founded fear . . . through an offer of specific proof that [their] fear is both subjectively genuine and objectively reasonable.'"  Chen v. Lynch, 814 F.3d 40, 45 (1st Cir. 2016) (quoting Singh, 750 F.3d at 86).  Under either form of proof, the petitioners must demonstrate that one of the five protected grounds is at least "one central reason for the harm alleged."  Barnica-Lopez v. Garland, 59 F.4th 520, 528 (1st Cir. 2023) (internal quotation marks omitted) (quoting Sanchez-Vasquez v. Garland, 994 F.3d 40, 47 (1st Cir. 2021)).

The IJ and BIA concluded that the petitioners failed to bear their burden as to the two separate particular social groups they claimed: "Salvadoran business owners perceived as wealthy" and the "Sanchez-Rivas nuclear family." Because the IJ's findings rest on substantial evidence and the BIA made no errors of law, we deny the petition for review.

The petitioners first argue that the IJ and BIA erred when they determined that the group "Salvadoran business owners perceived as wealthy" was not a particular social group. We disagree. Here, the BIA selected the test this circuit has accepted for identifying a particular social group. It examined whether the group "(1) has members who share a common immutable characteristic, (2) is defined with particularity, and (3) is socially distinct within the society." See Hernandez-Martinez v. Garland, 59 F.4th 33, 39 (1st Cir. 2023) (recognizing that "[o]ur circuit has . . . 'accepted'" that three-part test (quoting Mayorga-Vidal v. Holder, 675 F.3d 9, 14 (1st Cir. 2012))).

Applying this test, the BIA concluded that "[b]eing a business owner and being perceived as wealthy are not immutable characteristics" and that the petitioners had not shown the group was "perceived as a distinct group within Salvadoran society." We have upheld similar applications of this test with respect to business-based particular social groups. See, e.g., Hernandez-Martinez, 59 F.4th at 37, 39 (upholding determination

- 9 -

that the group "business owners in Guatemala who have a high profit" was not protected). Because the BIA made no error of law in interpreting the statute and the IJ's factual findings related to the application of these factors are supported by substantial evidence, we deny the petition for review.

The petitioners next argue that the BIA and IJ erred when they concluded that the petitioners had failed to establish a nexus between the alleged persecution and their membership in the Sanchez-Rivas family. It is true, as the BIA and IJ also noted, that a nuclear family can be a particular social group under certain circumstances. See, e.g., Aldana-Ramos v. Holder, 757 F.3d 9, 15 (1st Cir. 2014). Nevertheless, the IJ and BIA determined that the petitioners failed to demonstrate that their treatment in El Salvador occurred on account of their family membership. Substantial evidence supports that conclusion.

To demonstrate their treatment occurred on account of their membership in a nuclear family, the petitioners had to show that their family identity was "at the root of the persecution, so that family membership itself br[ought] about the persecutorial conduct." Barnica-Lopez, 59 F.4th at 530 (quoting Ruiz-Escobar v. Sessions, 881 F.3d 252, 259 (1st Cir. 2018)). Such claims fail where "multiple family members happen to be persecuted for a common reason[,] but the [reason for] animus is not kinship." Perlera-Sola v. Holder, 699 F.3d 572, 576 (1st Cir. 2012). Here,

- 10 -

the IJ found that although the gangs made interconnected threats to members of the Sanchez-Rivas family, they did so as part of a strategy "to extort money from [them] because . . . they perceived [the family] to be wealthy."  In affirming that conclusion, the BIA noted that the petitioners testified that each threat came with a demand for money, that "other family members were harmed in El Salvador because they refused to pay," and that the petitioners' remaining family members in El Salvador had not been harmed or threatened after Rivas-Alvarenga left the country.  The record contains substantial evidence to support the conclusion that financial gain, not family membership, was "at the root of" the threats petitioners received.[1]

**B.**

The petitioners also assert a claim for withholding of removal under 8 U.S.C. § 1231(b)(3).  Withholding of removal contains many of the same elements as an asylum claim -- namely, persecution on account of one of the same five protected grounds -- except that while an asylum application requires that the applicant demonstrate only a well-founded fear of such

---

[1]    The petitioners also argue that the IJ and BIA erred when they concluded that the petitioners' evidence of threats in El Salvador fell below the requisite level of harm to constitute persecution.  Because we hold that the IJ and BIA did not err when they concluded that the petitioners had failed to carry their burden as to the two particular social groups they claimed, we do not address the IJ's and BIA's conclusions with respect to the level of harm necessary to constitute persecution.

- 11 -

persecution, withholding of removal requires the applicant to demonstrate that it is more likely than not that he or she will in fact be persecuted on account of a protected ground in the country of removal.  Hernandez-Martinez, 59 F.4th at 40; see also INS v. Cardoza-Fonseca, 480 U.S. 421, 430-31 (1987).  Because we have concluded that the BIA and IJ did not err when they concluded that the petitioners had failed to meet their burden with respect to persecution on account of a protected ground for purposes of asylum, it follows that they did not err when they concluded that the petitioners did not meet their heavier burden for withholding of removal.  See, e.g., Hernandez-Martinez, 59 F.4th at 40 (applying this logic).

## C.

Although the petitioners originally pressed a claim for relief under the CAT before the IJ, who denied it, they waive any argument regarding CAT relief because they mention it only in passing without developing the claim.  See Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010).  We deny any portion of the petition seeking review of that part of the IJ and BIA decisions.

## IV.

For the foregoing reasons, the petition for review of the decision of the BIA is **denied**.