# United States Court of Appeals
## For the First Circuit

No. 19-1283

MOHAMED ABDELRHMAN DAOUD,

Petitioner,

v.

WILLIAM P. BARR,

UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Aimee Leah Mayer-Salins, with whom Fragomen, Del Rey, Bernsen & Loewy, LLP and Catholic Legal Immigration Network, Inc., were on brief, for petitioner.
Trina Realmuto, Kristin Macleod-Ball, Emma Winger, and Philip L. Torrey on brief for the American Immigration Council and the Harvard Immigration and Refugee Clinical Program, amici curiae.
Elizabeth Fitzgerald-Sambou, with whom Andrew B. Insenga, Trial Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Joseph H. Hunt, Assistant Attorney General, Civil Division, and Kiley Kane, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

January 28, 2020

**LYNCH**, **Circuit Judge**. The Bureau of Immigration Appeals (BIA), whose 2019 opinion rejecting reopening and reconsideration of denial of relief is under review, gave two alternative and independent grounds for its decision. See In Re Mohamed Abdelrhman Daoud, No. A079-818-142 (B.I.A. Feb. 21, 2019). One ground was far reaching and affects an entire group of removed persons, whereas the other was particular to the circumstances of petitioner Mohamed Abdelrhman Daoud. Daoud, a native and citizen of Sudan, was removed from the United States in May 2014 after his conviction for the crime of robbery, and he seeks in his petition to be brought back so that he may pursue his claims of relief from removal. We consider only the BIA's alternative, narrower ground and hold that the limitations in 8 U.S.C. § 1252(a)(2)(C)-(D) divest us of jurisdiction over the petition.

The petition argues that the BIA erred in three respects: (1) it failed to consider Daoud's argument that the filing deadline for his motion to reopen and to reconsider should be equitably tolled due to his mental illness and post-removal imprisonment in Sudan; (2) it impermissibly applied a regulation known as the "post-departure bar,"[1] 8 C.F.R. § 1003.23(b)(1); and (3) it

---

[1] The term "post-departure bar" refers to two analogous regulations, 8 C.F.R. § 1003.23(b)(1) and 8 C.F.R. § 1003.2(d). We deal here with § 1003.23(b)(1), which applies to motions before the immigration court. Section 1003.2(d) applies to motions before the BIA.

improperly denied in its exercise of its discretion his motion to reopen on its alternate ground.

We do not reach the difficult issue about whether the BIA is correct in its interpretation under the relevant statutes of the scope of the regulatory post-departure bar, 8 C.F.R. § 1003.23(b)(1), as to certain removed aliens. As we discuss below, we lack jurisdiction to review the BIA's denial of relief as an exercise of its discretion. Any opinion on the BIA's interpretation of the regulatory post-departure bar, then, "would be purely advisory and beyond our authority under Article III." Ortega v. Holder, 736 F.3d 637, 640 (1st Cir. 2013); see also Zajanckauskas v. Holder, 611 F.3d 87, 90 (1st Cir. 2010) (applying a different subsection of 1252(a)(2) to alternate holdings and stating that "if there are two alternative grounds for a decision and we lack jurisdiction to review one, it would be beyond our Article III judicial power to review the other" and that without the authority "to review the discretionary ground, any opinion of ours reviewing the nondiscretionary ground could not affect the final order's validity and so would be advisory only" (alteration omitted) (quoting Ekasinta v. Gonzales, 415 F.3d 1188, 1191 (10th Cir. 2005))). Consequently, we will consider only the alternative, discretionary holding.

And our review of that discretionary holding leads us to dismiss the petition on the basis that our jurisdiction is limited

to issues of law and constitutional issues by 8 U.S.C. § 1252(a)(2)(C)-(D), and none are presented here.[2] See Mehilli v. Gonzales, 433 F.3d 86, 93 (1st Cir. 2005) ("Under the terms of [the] limited jurisdictional grant [in 8 U.S.C. § 1252(a)(2)(D)], 'discretionary or factual determinations continue to fall outside the jurisdiction of the courts of appeals.'" (quoting Vasile v. Gonzales, 417 F.3d 766, 768 (7th Cir. 2005))). So, we lack jurisdiction.

I.

A. Original Removal Proceedings

Daoud was admitted to the United States on June 10, 2001 as a refugee from Sudan. On December 14, 2005, he became a lawful permanent resident. In October 2012, Daoud was convicted of robbery, N.H. Rev. Stat. ch. 636:1, in New Hampshire state court.

In October 2013, the Department of Homeland Security (DHS) brought removal proceedings against Daoud by serving him with a Notice to Appear, charging that he was removable pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii). It charged specifically that Daoud's robbery conviction constituted an aggravated felony

---

[2] The jurisdictional limitations embodied in 8 U.S.C. § 1252(a)(2)(C)-(D) are being reviewed by the Supreme Court this term in both Ovalles v. Barr (18-1015) and Nasrallah v. Barr (18-1432). Neither of these decisions affects the outcome here, as those cases involve different issues than the issues before us here.

- 5 -

under the INA because it met the definitions of a crime of violence, id. § 1101(a)(43)(F), and a theft offense, id. § 1101(a)(43)(G).

In November 2013, Daoud appeared pro se before the immigration court and requested relief from removal in the forms of asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He testified in support of his applications. On December 12, 2013, the Immigration Judge (IJ) issued an oral decision denying Daoud's applications for relief and ordering him removed to Sudan. The IJ's later written decision, on later motions to reopen and reconsider, is described below.

As to that original denial of relief, the IJ first addressed Daoud's competency. Daoud had argued that he suffered from several mental illnesses but the IJ concluded that Daoud was competent.[3] The IJ noted that Daoud stated he understood the questions he was asked, gave largely responsive answers, clarified his responses without difficulty when asked, and had informed the court that he was not having any physical difficulties.

---

[3] The IJ later corrected the statement made orally that there were no indicia of mental incompetency in the written decision on Daoud's motion to reopen and to reconsider. The IJ noted that "the fact that the Court misspoke during the course of its oral decision is immaterial to its final determination because the Court treated [Daoud] as if he had presented indicia of incompetency and took the appropriate measures."

The IJ did not make an adverse credibility finding but expressed "serious doubts" about Daoud's credibility because of major inconsistencies between his in-court testimony, and his refugee documents and I-589 application. The IJ explained that these doubts were not overcome with reasonably available corroborating evidence because Daoud had failed to produce any affidavits or testimony from his family, who lived nearby in New Hampshire.

Turning to Daoud's applications for relief, the IJ first held that Daoud's aggravated felony conviction barred his asylum application. The IJ next denied Daoud's request for withholding of removal, concluding that Daoud had not met his burden of proving that he had not been convicted of a "particularly serious crime," and this barred withholding of removal relief.

As to protection under the CAT, the IJ concluded that Daoud had not met his burden of proving he would be subjected "to torture by, or at the instigation of, or with the consent or acquiescence of a public official." The IJ stated that even putting aside concerns about credibility, there was no evidence that if Daoud were returned to Sudan, he would be "taken into custody and subjected to torture or killed, as he fears." On December 12, 2013, the IJ, finding Daoud removable as charged, ordered him removed to Sudan. Daoud did not take an appeal to the BIA. Daoud was removed to Sudan in May 2014, after the expiration

- 7 -

of the statutory time limits to file a timely motion to reopen or to reconsider.

B.   Motion to Reopen and to Reconsider

On December 8, 2015, some eighteen months after removal, Daoud, then apparently in Egypt and represented by counsel, filed a motion to reopen removal proceedings as to his three requests for relief based on purported changed country conditions in Sudan. Daoud also characterized his motion as a motion to reconsider the IJ's conclusions that his robbery conviction constituted an aggravated felony and that he was competent during his removal proceedings, from which he had not earlier taken an appeal to the BIA.

Because his motion was outside the ninety-day deadline for motions to reopen and the thirty-day deadline for motions to reconsider, Daoud offered two arguments: (1) the two deadlines should be equitably tolled; and (2) his motion to reopen fell within the exception to the deadline for changed country conditions. See 8 U.S.C. § 1229a(c)(7)(C)(ii).

In support of his equitable tolling argument, Daoud argued that he faced two extraordinary circumstances that prevented him from filing either on time. He argued that upon his removal to Sudan some 140 days after the IJ's decision, he was imprisoned in Sudan, and he suffered from severe mental illness. He simply asserted that he acted with due diligence in pursuing

his motion by seeking assistance in filing his motion "[w]ithin weeks" of his arrival in Egypt after his escape from Sudan.

As to changed country conditions, Daoud introduced some evidence that he had been imprisoned and tortured by Sudanese officials. He argued that this evidence was material and previously unavailable, satisfying the statutory changed country conditions exception to the ninety-day filing deadline.

On February 9, 2016, the IJ issued a written decision denying Daoud's motion. The IJ concluded that she did not need to reach the post-departure bar issue because even if the bar did not apply, Daoud's motion would fail in any event. As to Daoud's changed country conditions argument, the IJ concluded that, even accepting Daoud's version of events as true, he was not eligible for the exception to the filing deadline. The IJ stated that even if Daoud were detained and tortured, these harms were "based upon a change in [Daoud's] personal circumstances brought about by his criminal convictions and subsequent removal to Sudan, which is not a basis for reopening proceedings." Further, the IJ concluded that Daoud "ha[d] not established that conditions ha[d] materially changed [in Sudan] since the Court first considered his asylum application."

The IJ declined to equitably toll the filing deadline for Daoud's motion to reopen because Daoud had not shown he exercised due diligence. The IJ noted that even assuming Daoud

could not have filed his motion while detained in Sudan, Daoud had (1) provided no evidence of how much time had elapsed between his escape from Sudanese prison, his arrival in Egypt, and his filing of the motion to reopen, and (2) he had not described in his own declaration any of the "steps he took, or obstacles that he faced, in pursuing his [m]otion."

The IJ specifically addressed Daoud's assertions that in her earlier oral decision, she had erred in assessing his competency and declining to apply safeguards. The IJ noted that although she had erroneously stated there were no indicia of incompetency, she had nevertheless proceeded as if Daoud had presented indicia of incompetency and "conducted the necessary competency assessment." Specifically, the IJ stated that given Daoud's testimony and demeanor over the course of the December 12 hearing, she found that Daoud's testimony was "fully coherent, responsive to the questions asked of him, and that his answers were appropriate in all pertinent respects." Further, when Daoud testified about his mental health, the IJ asked Daoud follow up questions about the nature of his mental state and ensured that he understood the questions he was asked. The IJ concluded that she had properly determined that Daoud was competent, so no safeguards were needed.

Viewing Daoud's motion as a motion to reconsider, the IJ declined to equitably toll the deadline for the same reasons as

for the denial of the motion to reopen.  Accordingly, the IJ denied Daoud's dual motion.  The IJ also declined to reopen or reconsider sua sponte, explaining that Daoud had not made a "prima facie showing that he is eligible for the relief he seeks," had not established "exceptional circumstances warrant[ing] reopening," and that "serious doubts" had been raised about his credibility."

C.   BIA Decision

Daoud appealed the IJ's decision to the BIA.  Daoud's briefing to the BIA challenged the IJ's decisions not to equitably toll the filing deadlines and that he had not satisfied the changed country conditions exception to the ninety-day filing deadline for motions to reopen.[4]  He also argued that the IJ erred in declining to reopen sua sponte, and in "declining to reopen on the basis that relief would not be granted in the exercise of discretion."

On February 21, 2019, the BIA dismissed Daoud's appeal. As to Daoud's motion to reopen, the BIA provided two independent and alternative rationales for affirming.  It held that the post-departure bar, which provides that "[a] motion to reopen . . . shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to

---

[4]   Daoud later argued to the BIA that the IJ relied on the regulatory post-departure bar in denying his motion to reopen and to reconsider, but this characterization of the IJ opinion is not correct.  The IJ discussed the post-departure bar but did not rely on it.

his or her departure from the United States," 8 C.F.R. § 1003.23(b)(1), prevented Daoud from filing his motion to reopen under its interpretation of 8 U.S.C. § 1229a(c)(7)(C)(i)-(ii). The BIA independently and alternatively held, even if the post-departure bar did not apply, that it denied the motion in the exercise of discretion.

As said, we review only the alternative holding. As to its alternative holding, the BIA stated that even if the post-departure bar did not prevent Daoud's motion to reopen, it would deny the motion in the exercise of its discretion because "the weight of the evidence . . . would not justify reopening of an asylum, withholding of removal, or [CAT] case, from abroad, years after the final administrative order was entered, after proceedings on the merits of [Daoud's] case in the first instance have already concluded with an order of removal." The BIA noted that this was "particularly so in light of the significant passage of time since the order of removal in 2013 and [Daoud's] serious criminal history."

As to equitable tolling, the BIA described in detail the argument that Daoud had presented to the IJ, stating that Daoud "argues that to the extent the [ninety]-day filing deadline applies, it should be equitably tolled because of the effects of his mental illness and his detention upon returning to Sudan, which prevented him from timely filing the motion." The BIA then

summarized the IJ's conclusion that Daoud "did not establish that the filing deadline should be equitably tolled" because he "did not establish that he exercised due diligence in pursuing his motion."

In its discussion of the motion to reopen, the BIA also made references to timeliness. The BIA specifically stated that Daoud "had until March 12, 2014, to file a timely motion to reopen within the applicable deadline." The BIA then noted that Daoud was not physically removed to Sudan until May 2014, which was about two months after the ninety-day deadline to file a motion to reopen had expired. The BIA also repeatedly referred to Daoud's motion to reopen as "untimely."

Looking at the motion as one to reconsider, the BIA explicitly affirmed the IJ's denial of the motion as untimely. The BIA noted that Daoud's motion was "filed almost [two] years after the final administrative order" and found that there was "no basis to conclude the [thirty]-day filing deadline does not apply or that sua sponte reconsideration is warranted."

Daoud timely petitioned for review to this court.

## II.

Our jurisdiction is limited by statute: "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in . . . [§] 1227(a)(2)(A)(iii)." 8 U.S.C.

- 13 -

§ 1252(a)(2)(C); see also Larngar v. Holder, 562 F.3d 71, 75 (1st Cir. 2009) (stating that this court "lack[s] jurisdiction to review any final order of removal against an alien who is removable because he committed a 'covered' criminal offense," which includes aggravated felonies (quoting 8 U.S.C. § 1252(a)(2)(C))). The government argues that this jurisdictional bar applies, and Daoud does not offer any argument contesting this conclusion.

Under this bar, our jurisdiction is limited to review of "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); see also Larngar, 562 F.3d at 75. As said, we hold that no questions of law or constitutional claims are presented by Daoud's challenge to the BIA's alternative discretionary holding.[5] See Mejia-Rodriguez v. Holder, 558 F.3d 46, 50 (1st Cir. 2009) (applying 8 U.S.C. § 1252(a)(2)(C) and noting that "had any discretionary decision been made on the facts of [petitioner's] case, this would not be subject to judicial review, given the restraints of 8 U.S.C. § 1252(a)(2)").

---

[5] Daoud's case is unlike Larngar v. Holder, 562 F.3d 71 (1st Cir. 2009), where the court determined that the issue of whether the BIA erred when analyzing if the petitioner's claim involved a change in personal circumstances or a change in country circumstances was reviewable, despite the applicability of 8 U.S.C. § 1252(a)(2)(C). Id. at 77. The Larngar court was concerned that the BIA had not applied a "properly framed burden of proof." Id. at 78 (emphasis omitted). Here, Daoud's assertions of error do not similarly challenge the BIA's analysis for improperly framing the burden of proof.

- 14 -

We reject Daoud's effort to avoid the jurisdictional bar by presenting what he claims are two issues of law. He first argues the BIA lacked the authority to deny his motion to reopen on discretionary grounds because, in his view, such discretion would conflict with the nondiscretionary nature of the motion to reopen statute, 8 U.S.C. § 1229a(c)(7), and because withholding of removal and CAT protection are nondiscretionary forms of relief.[6] He similarly argued in the sua sponte reopening section of his briefing before the BIA that the IJ's statement -- that it did "not find there to be a reasonable likelihood that relief will now be granted in the exercise of discretion" -- could "only refer[] to [his] application for asylum . . . as that is the only discretionary relief he requested."

Daoud's challenge to the BIA's discretion is not before us because he has not presented us with a question of law capable of our review. He seeks to challenge the BIA's decision to deny his motion to reopen, which it explicitly stated that it took in the exercise of its discretion. As noted by the IJ in her decision

---

[6] Daoud also attempts to avoid the jurisdictional bar by arguing that because, in his view, the BIA lacks discretion under the statute, our standard of review should be de novo. But, as the government points out, whether or not the underlying issue involves "discretion" does not dictate the standard of review. See, e.g., Amanullah v. Nelson, 811 F.2d 1, 10 (1st Cir. 1987) (applying a "facially legitimate and bona fide reason" standard, rather than "abuse of discretion," for reviewing the Attorney General's discretionary decision to deny parole).

of February 9, 2016, an IJ "has discretion to deny a motion to reopen even if the moving party has established a prima facie case for relief."  8 C.F.R. § 1003.23(b)(3).  The BIA also has such regulatory discretion under 8 C.F.R. § 1003.2(a).  Referencing the "significant passage of time" and other factors, the BIA denied the motion.

While Daoud seeks to repackage his argument on appeal as a challenge to the source of this discretion, he did not contend before the BIA that the BIA could not rely on the regulations identified by the IJ and the corollary BIA regulation.  His suggestion to the BIA that withholding of removal and CAT protection are "[non]discretionary" was not sufficient to exhaust this issue either.  While he now argues that the BIA lacks discretion to deny motions to reopen to apply for such relief, before the BIA he only noted that asylum is a "discretionary" form of such relief.  And "arguments not raised before the BIA are waived due to a failure to exhaust administrative remedies."  Shah v. Holder, 758 F.3d 32, 37 (1st Cir. 2014) (quoting Molina De Massenet v. Gonzales, 485 F.3d 661, 664 (1st Cir. 2007)).[7]

---

[7]   Further, he argues his failure to exhaust should be excused because the BIA implicitly ruled against him in asserting it had discretionary jurisdiction.  See Velerio-Ramirez v. Lynch, 808 F.3d 111, 117 (1st Cir. 2015).  He misreads Velerio-Ramirez and it is factually distinguishable.  In that case, the IJ applied the wrong law to the petitioner's case.  Id. at 113.  The petitioner appealed to the BIA, and the BIA raised the issue of what law

- 16 -

Second, he argues he still has an argument that the BIA failed to consider equitable tolling. Daoud's argument fails for two reasons. First, we have held that "the decision to apply equitable tolling is a judgment call," meaning the BIA's discretionary decision to deny relief eliminates any need for it to consider equitable tolling. Gyamfi v. Whitaker, 913 F.3d 168, 174 (1st Cir. 2019). Second, the very premise of Daoud's argument is unsupported; the BIA did consider, and reject, the application of equitable tolling to this case. It explicitly described Daoud's equitable tolling argument and the IJ's reasoning for rejecting it.[8] The BIA also noted that the deadline had expired even before Daoud was removed to Sudan and repeatedly described his motion as "untimely." Indeed, the BIA concluded that it saw "no basis" to extend the thirty-day deadline for the motion to reconsider. Daoud's arguments for equitably tolling the deadline for both

---

should apply sua sponte, making a determination that the relevant analysis would be the same under either possible alternative. Id. at 117. The petitioner then raised this same issue in her petition for review, and we determined that our review was not precluded due to failure to exhaust because the BIA itself raised the issue. Id. But here, the BIA made no explicit determination as to the scope of its discretionary authority. It simply exercised its discretion, which Daoud had not challenged after the IJ had identified it.

[8] We assume, but do not decide, that equitable tolling is available to Daoud to toll the filing deadline. See Bolieiro v. Holder, 731 F.3d 32, 39 (1st Cir. 2013) ("[W]e have not yet decided whether equitable tolling applies to the statute's ninety-day deadline, despite multiple opportunities to do so.").

motions were the same and the IJ applied her reasoning on the motion to reopen to the motion to reconsider. So, as the government rightly states, the BIA did consider, and reject, the argument and there would be no point in a remand.

The BIA made it evident in its opinion that it was rejecting the argument. See Sulaiman v. Gonzales, 429 F.3d 347, 350 (1st Cir. 2005) (stating that while the IJ "did not use the phrase 'past persecution[,]' [i]t is nevertheless evident from her opinion that she found no indication that Sulaiman's experiences in Syria amounted to persecution"); id. at 351 ("We do not require an IJ to intone any magic words before we will review her determination."). As such, there is no legal issue for us to review.

Daoud's petition for review is dismissed.