# United States Court of Appeals
## For the First Circuit

No. 22-1220

JOEL NJOROGE MANGURIU,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Lynch, and Thompson,
Circuit Judges.

Bernal Peter Ojeda on brief for petitioner.

Brian Boynton, Assistant Attorney General, Shelley R. Goad,
Assistant Director, and Tim Ramnitz, Senior Litigation Counsel,
Office of Immigration Litigation, on brief for respondent.

November 16, 2023

THOMPSON, **Circuit Judge**. Petitioner Joel Njoroge Manguriu, a Kenyan national, asks this court to review the decisions of an immigration judge and the Board of Immigration Appeals regarding whether U.S. Citizenship and Immigration Services properly served him with the notice of its intent to revoke his visa petition (underpinning his request for adjustment of status) and the official revocation that followed. In Manguriu's telling, the notice of intent to revoke his visa petition was legally insufficient because notice was not served directly upon him, rather it went out only to an individual he says is a "former" attorney. The government submits, inter alia, that service upon the attorney of record in the visa petition proceedings was proper based on the applicable regulations and relevant policies.

For reasons we'll soon explain, we must dismiss the petition for review.

## Background

Manguriu's path through our country's immigration system has been long and winding. When Manguriu's file first came before this court, "[t]he relevant facts [were] easily assembled." Manguriu v. Lynch, 794 F.3d 119, 120 (1st Cir. 2015) (hereinafter "Manguriu I"). Given the passage of time, the various proceedings that played out in the interim, and the issue raised now on appeal, we have more background to lay out this time around. While we

- 2 -

need not detail the totality of Manguriu's dense history before various immigration agencies and entities in order to inform and explain today's outcome, it is necessary to provide a somewhat comprehensive setup to appreciate the full picture of Manguriu's situation. (A heads-up to the reader -- make a flow chart.) We do so next, drawing the relevant facts from the administrative record. See Dor v. Garland, 46 F.4th 38, 42 (1st Cir. 2022).

### Pre-Remand Proceedings

Manguriu entered the U.S. back in 1999 on a student visa, which he overstayed. He married a U.S. citizen in 2005 and she later filed an I-130 visa petition (seeking to classify Manguriu as a spouse of a U.S. citizen) in July of 2006. Based on that petition, Manguriu applied for adjustment of status.[1] But U.S. Citizenship and Immigration Services (USCIS)[2] denied the I-130

---

[1] "Adjustment of status is a process by which '[non-citizens] physically present in the United States may obtain [lawful] permanent resident status without leaving' the country to apply for a visa via consular processing." Thomas v. Garland, 25 F.4th 50, 51 (1st Cir. 2022) (quoting De Acosta v. Holder, 556 F.3d 16, 18 (1st Cir. 2009)) (second alteration in original). "An individual can seek adjustment of status in a removal proceeding as a form of relief from removal." Id.

[2] USCIS stands apart from the immigration court system -- their work is sometimes interrelated, but each operates under different umbrellas and in different silos. See 8 C.F.R. Ch. I (Department of Homeland Security), V (Executive Office for Immigration Review, Department of Justice). Indeed, whereas our immigration court system is housed within the Department of Justice's Executive Office for Immigration Review, which exercises its function of adjudicating immigration cases and conducting immigration court proceedings and appellate reviews under

petition based on marriage fraud, and that threw a wrench into Manguriu's pursuit of adjustment of status. When the Department of Homeland Security (DHS) got removal proceedings underway in 2009, Manguriu sought relief from removal under the Violence Against Women Act (VAWA), 8 U.S.C. § 1154(a)(1)(A)(iii), claiming he was the spouse of an abusive U.S. citizen and filing, through his attorney, Richard Cabelus, an I-360 visa petition with USCIS to that effect in January 2010.

USCIS approved Manguriu's I-360 petition in December 2010, and Manguriu then used that approved petition to ask an immigration judge (IJ) to adjust his status. Making an adverse credibility finding and citing other reasons not relevant here, the IJ denied Manguriu's adjustment-of-status petition and ordered him removed in March 2012. Manguriu appealed, but the Board of Immigration Appeals (BIA) agreed with the IJ's decision and dismissed Manguriu's appeal in February 2014. Undeterred, Manguriu filed the Manguriu I petition for review, arguing that

---

delegated power from the Attorney General, see THE U.S. DEP'T OF JUSTICE, https://www.justice.gov/eoir/about-office (last visited Nov. 16, 2023); THE U.S. DEP'T OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW: AN AGENCY GUIDE (2017), https://www.justice.gov/eoir/page/file/eoir_an_agency_guide/download, USCIS is "a component of the Department of Homeland Security" responsible for administration of immigration benefits and "oversee[ing] lawful immigration to the United States," see U.S. CITIZENSHIP AND IMMIGRATION SERVS., https://www.uscis.gov/about-us/mission-and-core-values/what-we-do (last visited Nov. 16, 2023); HOMELAND SEC., DEP'T OF HOMELAND SEC. PUB. ORG. CHART, https://www.dhs.gov/sites/default/files/2023-02/23_0221_dhs_public-organization-chart.pdf.

- 4 -

the agency committed legal error in denying his adjustment-of-status claim.  794 F.3d at 121.

That brings us to the part of Manguriu's procedural history that is at the root of his arguments before us now.  In the wake of his petition to this court in which he challenged the BIA's affirmance of the IJ's decision denying his requested adjustment of status -- but before the Manguriu I panel rendered any decision on it -- USCIS sent out an April 24, 2014 notice of its intent to revoke its December 2010 approval of Manguriu's I-360 petition on the basis of his questionable credibility (laying out its own reasoning on this issue and also citing the IJ's opinion), which included an invitation to submit evidence that would rebut the cited grounds for revocation.  The April 24 USCIS notice was sent by mail solely to the address for Cabelus, the attorney who filed Manguriu's I-360 back in January 2010.  Specifically, it was addressed to "Joel Njoroge Manguriu, C/O Richard Cabelus Esq, 340 Main Street Suite 712, Worcester MA 01608."  USCIS got no response.  On June 20, 2014, USCIS revoked its approval of the visa petition.

Since then, Manguriu has maintained he didn't receive any notice whatsoever of USCIS's intent to revoke -- Cabelus was not his attorney at the time the notice went out, he says, and no notice was sent to him personally.  He argued as much in the reply brief he filed in Manguriu I, urging (in response to the government's argument that there was no valid visa petition upon

which Manguriu could adjust status) that he lacked proper notice of USCIS's intent to revoke.  Id. at 121, 122.  In view of that argument, the Manguriu I court, taking judicial notice of USCIS's revocation decision, id. at 121, and the "tenebrous" record surrounding the issue, opted for a remand, id. at 122 ("The petitioner's claim that the revocation is ineffective for want of proper notice is sufficient (though barely) to raise a factual question requiring remand.").  It did so with instructions that the agency "make due inquiry and determine, among other things, whether the revocation of the VAWA [(I-360)] petition was lawfully accomplished and, if so, whether the BIA decision that is the subject of this petition for judicial review is now moot."  Id.[3]

### Post-Remand Proceedings

Faced with this court's mandate, the BIA remanded to an IJ for further fact-finding on the notice question.  At a January 2016 hearing, the IJ administratively closed (sua sponte) the proceedings to allow then-pro se Manguriu time to get a lawyer who could then help him undertake further action on his I-360 self-

---

[3] In a motion to reconsider, the government argued the BIA lacked jurisdiction to review whether Manguriu had proper notice, but the court denied the motion, explaining "a remand is necessary so that the BIA, either directly or through a further remand to the [IJ], may gather any available evidence relevant to the mootness inquiry" and that "[s]uch a task is well within the BIA's jurisdiction."  Manguriu I, 794 F.3d at 123.

petition before USCIS -- and the IJ instructed Manguriu to move to re-calendar the proceedings once he got a response from USCIS.[4]

Time -- and various continuances and other wranglings -- marched on.[5] In March 2018, a counseled Manguriu appeared before the IJ. At that hearing, noting the case's "rather unusual posture" and mindful of this court's mandate and the BIA's remand to her, the IJ, at the government's request, queried whether she had jurisdiction to delve into whether Manguriu had received proper notice, the point being that she had no authority over USCIS and, if she found insufficient notice, she would be powerless to order USCIS to reopen the I-360 proceedings. Purportedly to sidestep this dilemma and pursuant to this court's order, the parties agreed that the IJ should engage in fact-finding to consider the notice-sufficiency question, and they asked her to hold a hearing for that purpose.

Manguriu and his counsel appeared before the IJ in August 2018 for that evidentiary and merits hearing. The IJ got things

---

[4] The administrative closure prompted the Manguriu I panel to dismiss as moot the petition for review over which it had retained appellate jurisdiction. See 794 F.3d at 122.

[5] For example, in February 2017, DHS moved that proceedings should resume because Manguriu had taken no action before USCIS regarding his I-360. A counseled Manguriu appeared at the April hearing that ensued and agreed he'd taken no steps to pursue his I-360. Manguriu's counsel requested copies of the notice and revocation decision (DHS protested that Manguriu should have obtained those documents from USCIS since the last hearing) and a continuance to review them. The IJ continued proceedings to December 2017.

started by setting the stage: USCIS served the 2014 notice and revocation decision on Cabelus, but did Cabelus still represent Manguriu in his I-360 proceedings at the time of service, or had he obtained new counsel? The government represented that Cabelus never withdrew from representing Manguriu in his I-360 proceedings, and no other counsel had ever entered an appearance in these proceedings -- certainly Manguriu had other counsel, such as attorney Jamie Jasso in Manguriu I, but when it came to representation before USCIS, Cabelus was the only attorney of record.

For his part, Manguriu testified he hired the Cambridge Lawyers Group to help him with his I-360 before USCIS and his adjustment of status, working with Cabelus and another attorney in that office, Oneyma Kamalu. After the BIA's 2014 decision, Manguriu testified, he had no contact with Cabelus or Kamalu; Jasso represented him in his Manguriu I petition for review, and Jasso never received notice of USCIS's notice of intent to revoke and revocation decision. Manguriu stated that, had he received notice, he would have responded. When the government asked when Cabelus and Kamalu stopped representing him, Manguriu answered that they stopped representing him after the BIA's February 2014 decision. When the government pressed Manguriu as to whether he'd asked Cabelus and Kamalu to withdraw, he said no; when the government queried whether (to his knowledge) either of those attorneys had

filed a request to withdraw, Manguriu said he didn't "have any . . . knowledge of that."

The IJ wrestled with what she'd heard: "[n]otice to counsel is notice to [Manguriu]"; "that [counsel] didn't notify [Manguriu] isn't the [g]overnment's fault"; "[b]ut [Manguriu] didn't have an opportunity to participate because his lawyers didn't tell him about the proceedings . . . I don't know what happened there"; "I mean there is a claim perhaps for ineffective assistance," "[b]ut . . . is that the practical solution?"; and "[a]s a legal matter, . . . notice went to [Manguriu] through counsel. It was proper. . . . [T]here's nothing I can do." The IJ asked, "[W]here does that leave us?"

The government staked out the position that the record and Manguriu's testimony supported the conclusion that Cabelus was Manguriu's counsel of record before USCIS at the time of the notice of intent to revoke and the revocation decision and, therefore, USCIS properly served these documents on Cabelus. The government noted that failure by counsel to inform Manguriu of USCIS's notice and decision might amount to an ineffective assistance of counsel claim, but it had no bearing on the issue of proper notice by USCIS. Manguriu's lawyer indicated that she "[understood] legally [Manguriu] would have received notice because his attorney had received the notice of intent to revoke and also the revocation," but "[t]he fact is that Mr. Manguriu did not receive the notice."

And Manguriu's lawyer also pointed out "Manguriu never would have received the notice" directly from USCIS because, with VAWA applications, only the attorney of record receives notice, not a respondent.[6] When the IJ asked whether Manguriu had taken any steps to reopen his I-360 proceedings, his lawyer said he had not. The hearing concluded when the IJ signaled she'd issue a written decision.[7]

The IJ's written decision explained that USCIS served the notice and revocation decision on Manguriu's counsel of record for his I-360 self-petition (Cabelus), and service on counsel of record here constituted proper notice pursuant to 8 U.S.C. § 1229(a)(2)(A) ("In removal proceedings under section 1229a . . . a written notice shall be given in person to the [non-citizen] (or, if personal service is not practicable, through service by mail to the [non-citizen] or to the [non-citizen]'s counsel of record, if any)."), 8 C.F.R. § 103.2(b)(19)(ii)(A) ("When an

_____

[6] Manguriu's attorney was referring to 8 U.S.C. § 1367(a)(2) and the USCIS policy requiring USCIS to use a "safe address" system:  To ensure an abuser does not receive correspondence from USCIS regarding a VAWA self-petition, USCIS is required to send all correspondence concerning a VAWA self-petition to counsel of record, not the self-petitioner.  More on this to follow.

[7] After the hearing, Manguriu filed a motion to terminate the proceedings -- he said the IJ lacked jurisdiction because his notice to appear (a charging document in immigration proceedings) was defective in that it omitted the place and time for his initial hearing.  He appealed the IJ's denial of that motion to the BIA. But before us on appeal, he explicitly disclaims any pursuit of his challenge to the decisions on that matter.

applicant or petitioner is represented, USCIS will send original notices both to the applicant or petitioner and his or her authorized attorney or accredited representative."),[8] and USCIS policy as promulgated by DHS. The IJ thus reasoned that, since USCIS "lawfully accomplished" notice, Manguriu's adjustment of status claim was moot for lack of an underlying visa.

Manguriu appealed to the BIA. He argued that notice had been improper in light of the fact that Manguriu had "provided notice of change of attorney to USCIS in subsequent submissions." Alternatively, he urged, § 103.2 did not support a conclusion that service on counsel of record constitutes proper notice. The government opposed, saying the record was clear that Cabelus -- and only Cabelus -- represented Manguriu with respect to his I-360 petition with USCIS. And to the extent Manguriu was trying to make a policy-driven argument that USCIS should send its notices and decisions to a petitioner (not just counsel), the government stated such an approach would fly in the face of USCIS's policy of avoiding such service because it could clue in abusive spouses.

---

[8] The IJ cited the version of the regulation that was in effect as of January 27, 2015. As the government rightly notes, when USCIS served the notice and revocation decision in 2014, 8 C.F.R. § 103.2(b)(19) likewise provided for service on "applicants, petitioners, and their representatives" -- it just didn't contain the subsections ((i) and (ii)) that separate pro se applicants from counseled ones. Compare 8 C.F.R. § 103.2 (2013) with 8 C.F.R. § 103.2 (2015).

In March 2022, the BIA affirmed the IJ's decision that USCIS properly served Manguriu. The BIA was not persuaded by Manguriu's unsupported argument that a different attorney represented him -- rather, the BIA wrote, while another attorney (Kamalu) did represent Manguriu as to his adjustment of status application, that attorney did not submit a form designating his appearance in proceedings for the underlying visa petition, "which is a separate and distinct matter." The BIA reasoned that there was nothing in the record to suggest anyone other than Cabelus had served as counsel of record in Manguriu's I-360 proceedings. And since notice on counsel of record constitutes proper notice (§ 1229(a)(2)(A)), and Manguriu had conceded USCIS policy otherwise avoids service on self-petitioners represented by counsel because of the possibility the abusive spouse will become aware of the petition, the BIA, like the IJ before it, reasoned that USCIS "lawfully accomplished" notice of both the notice of intent to revoke and the revocation decision, and Manguriu's adjustment of status claim was moot for lack of an underlying visa as a result.

This timely petition for review followed.

## **Discussion**

Against this layered backdrop, Manguriu's argument on appeal reprises the general thesis he's advanced since 2015, i.e., USCIS didn't properly serve him with its intent to revoke his visa

- 12 -

and the agency[9] erred in concluding otherwise.  Should we see

things his way, he says, the dominoes would fall like so:

insufficient service means USCIS's revocation should be undone as

a matter of law for want of notice; that would thereby resuscitate

his visa petition; and that, in turn, would revive the foundation

for his adjustment of status claim.[10]

The government responds that notice was properly

accomplished based on the applicable regulations and USCIS policy.

---

[9] We'll use "the agency" to refer to the IJ and the BIA collectively.  See, e.g., Loja-Tene v. Barr, 975 F.3d 58, 60 n.1 (1st Cir. 2020).

[10]  In the final pages of his opening brief, Manguriu also floats an argument that the agency lacked subject matter jurisdiction to adjudicate the notice issue because USCIS has exclusive jurisdiction over VAWA petitions.  If this argument sounds familiar, it's for a reason:  It echoes the concern the government raised in its motion for reconsideration following Manguriu I.  See supra n.3.  As our colleagues clearly explained the last time this came up, "[the] contention that the [agency] lacks jurisdiction to review the validity of a decision revoking a visa petition may be true, but that contention misconstrues this court's mandate."  794 F.3d at 123.  Indeed,

> [b]ecause the government has raised a colorable claim of
> mootness and the facts relevant to that claim are not
> presently in the administrative record, a remand is
> necessary so that the BIA, either directly or through a
> further remand to the [IJ], may gather any available
> evidence relevant to the mootness inquiry (for example,
> whether the petitioner received actual notice of the
> revocation, the nature of the relationship between the
> petitioner's successive attorneys, and what, if any,
> steps the petitioner has taken since he learned of the
> revocation).  See Bryson v. Shumway, 308 F.3d 79, 90-91
> (1st Cir. 2002); City of Waco v. EPA, 620 F.2d 84, 86-
> 87 (5th Cir. 1980).  Such a task is well within the BIA's
> jurisdiction.  See, e.g., In re Neto, 25 I. & N. Dec.
> 169, 173 (B.I.A. 2010) (noting that despite lack of

- 13 -

Along the way, the government parries Manguriu's arguments to the contrary, flagging various exhaustion-related stumbling blocks and urging overall that Manguriu failed to present any exhausted challenge because the arguments he plugs here on appeal were not presented the same way below.

Manguriu's proposition here is straightforward -- the notice wasn't sent directly to him, and, on this record, the attorney who did receive the notice, for whatever reason (like the IJ, we "don't know what happened there"), did not loop Manguriu in. And thus, according to Manguriu, improper notification amounts to ineffective revocation of his visa petition. But his legal arguments run headlong into a series of barriers.

To explain, we lay out some guiding principles, starting with our parameters of review. "We review the BIA's conclusions of law de novo and provide 'some deference to the agency's expertise in interpreting both the statutes that govern its operations and its own implementing regulations.'" Sanchez v. Garland, 74 F.4th 1, 5 (1st Cir. 2023) (quoting Cabrera v. Lynch, 805 F.3d 391, 393 (1st Cir. 2015)). "Where, as here, the BIA

---

jurisdiction to adjudicate visa petitions, immigration judges "may examine the underlying basis for a visa petition when such a determination bears on the [non-citizen]'s admissibility").

Id. The remand for assessment of notice was cabined precisely to that question. We proceed to our review of the appeal from that sufficient-notice determination.

- 14 -

adopted the IJ's findings of fact, we review the IJ's findings for support by substantial evidence and 'accept the [IJ's] factual findings . . . unless the record is such as to compel a reasonable factfinder to reach a contrary conclusion."  Id. (emphasis and omission in original) (quoting Dorce v. Garland, 50 F.4th 207, 212 (1st Cir. 2022)).

Now, the pertinent regulations and law that guide our analysis.  Section 1229(a)(2)(A), relied upon by the agency here as generally prescribing how to effect notice in the context of removal proceedings,[11] provides that written notice (of changes or postponements in removal proceedings, specifically) "shall be given in person to the [non-citizen] (or, if personal service is not practicable, through service by mail to the [non-citizen] or to the [non-citizen]'s counsel of record, if any)."  And then there's 8 C.F.R. § 103.2(b)(19)(ii)(A), which provides in relevant part:  "When an applicant or petitioner is represented, USCIS will send original notices both to the applicant or petitioner and his or her authorized attorney or accredited representative."  And last but certainly not least, there's § 1367(a)(2), which instructs that, subject to exceptions not relevant here, "in no case may the Attorney General, or any other official or employee of the

_____

[11] See Matter of Estime, 19 I. & N. Dec. 450, 451 (B.I.A. 1987) (noting "portions of the regulations relating to evidentiary requirements in visa petition proceedings apply, of course, to the revocation of approved visa petitions" (citing 8 C.F.R. § 103.2)).

- 15 -

Department of Justice, the Secretary of Homeland Security, the Secretary of State, or any other official or employee of [DHS] or Department of State (including any bureau or agency of either of such Departments)" "permit use by or disclosure to anyone . . . of any information which relates to [a non-citizen] who is the beneficiary of an application for relief" under certain sections, including VAWA. Drawing from this statutory imperative, the USCIS's Policy Manual relative to VAWA petitions charges that USCIS "[o]fficers must keep in mind the [§] 1367 confidentiality provisions . . . , as well as the prohibition on the unauthorized disclosure of information related to a protected person, including acknowledgment that a self-petition exists." See USCIS Policy Manual, vol. 3, pt. D, ch. 6(A)(2) (citing 8 U.S.C. § 1367), https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-6#footnote-6 (last visited Nov. 16, 2023).

With this guidance in mind, and similarly mindful that Manguriu is not challenging the agency's fact-finding here, we examine his case.

Recall that a panel of this court remanded to the agency because, to determine whether revocation of the visa petition was lawfully accomplished, "potentially material facts" as to the notice issue needed to be found. Manguriu I, 794 F.3d at 122. The IJ did just that:

- Cabelus entered an appearance in the I-360 proceedings and never withdrew from representing Manguriu in his I-360 proceedings;
- No other counsel entered an appearance in the I-360 proceedings;
- Manguriu's counsel acknowledged that the attorney who handled the Manguriu I petition did not represent Manguriu before USCIS;
- Cabelus was the attorney of record for the I-360 proceedings; and
- USCIS served Cabelus with the notice of intent to revoke and the revocation decision.

On these unchallenged facts, coupled with the above-recapped regulatory and policy guidance providing for service of VAWA-based I-360 self-petitions -- and alert to our deference to the agency's knowhow when it comes to its own operations and regulations, see Sanchez, 74 F.4th at 5 -- we, like the agency, conclude notice was lawfully accomplished.

This conclusion is borne of how the relevant regulations and law flow together. Indeed, it's clear from the statute and regulations that notice generally can go to counsel of record and/or an applicant, and USCIS policy says the same -- except in the case of I-360 self-petitions under VAWA, where USCIS serves only the attorney of record because sending notice to the self-petitioner would run the risk that the petitioner's abuser would get notice too.

Section 103.2(b)(19)(ii)(A) instructs that notice should be sent "both to the applicant or petitioner and his or her authorized attorney or accredited representative," while

- 17 -

§ 1229(a)(2)(A) is clear that removal-proceedings notice "shall be given in person to the [non-citizen] (or, if personal service is not practicable, through service by mail to the [non-citizen] or to the [non-citizen]'s counsel of record, if any)." (Emphasis added.) See also Vaz dos Reis v. Holder, 606 F.3d 1, 5 (1st Cir. 2010) (assessing notice, in the context of reopening of removal proceedings based on lack of notice, and reasoning that "[t]he plain language of the statute indicates that notice to [a non-citizen's] counsel of record constitutes notice to the [non-citizen]").

And central to all of this is the fact that Manguriu's I-360 tapped into the power of VAWA -- that means notice here simply cannot be viewed in a regulation vacuum; the USCIS policy (based on § 1367(a)(2)) on such petitions is a notice-game-changer here. It's why notice went just to Cabelus. And, notwithstanding Manguriu's belief that Cabelus no longer represented him, because Cabelus was the attorney of record in those proceedings, it's why service on Cabelus was proper service as a matter of law.

Resisting this conclusion, Manguriu says the agency's reliance on the above-mentioned law was erroneous. But his protestations are both unfounded and unpersuasive. Manguriu generally characterizes the agency as having committed legal error when it "relied exclusively on inapplicable rules of service." But he does so without citation to caselaw supporting their

- 18 -

inapplicability to this case (and our research has turned up none), and he does so without mention of or attempt to somehow explain away §§ 1229(a)(2)(A) and 1367(a)(2) and their fundamental role in this analysis. And his effort to say why § 103.2 is inapplicable is flawed in that he posits that it applies only to represented petitioners and he was unrepresented in his I-360 proceedings in 2014, relying on previously unmentioned regulations (which we'll discuss momentarily) to advance this cause. But that angle is an unexhausted one.

Indeed, among Manguriu's appellate contentions is his position that he was unrepresented at the time of the 2014 revocation happenings because Cabelus's representation automatically terminated pursuant to 8 C.F.R. § 292.4(a)[12] back in 2010, when USCIS initially approved his visa petition, and it was error to consider Cabelus counsel of record "for a different new matter" come the 2014 revocation events. Additionally, he urges that USCIS should've served him directly pursuant to 8 C.F.R. § 205.2[13] -- USCIS had his address and everything, he says. And

_____

[12] Section 292.4(a) provides in pertinent part: "An appearance must be filed . . . by the attorney or accredited representative appearing in each case. . . . The appearance will be recognized by the specific immigration component of DHS in which it was filed until the conclusion of the matter for which it was entered."

[13] Section 205.2 explains: "Revocation of the approval of a petition of self-petition . . . will be made only on notice to the petitioner or self-petitioner. The petitioner or self-petitioner must be given the opportunity to offer evidence in support of the

- 19 -

he abstractedly faults the agency for failing to "consider these binding regulations."

We understand his core thesis to be unchanged, but these supporting arguments and the regulations cited to anchor them are new to Manguriu's attack on the notice issue; crucially (and, from Manguriu's perspective, perhaps regrettably) they were not raised before the agency and therefore they are not exhausted. See, e.g., Odei v. Garland, 71 F.4th 75, 78 n.1 (1st Cir. 2023);[14] Gomez-Abrego v. Garland, 26 F.4th 39, 47 (1st Cir. 2022) (explaining that "arguments not made before the BIA may not make their debut in a petition for judicial review of the BIA's final order" (quoting Ahmed v. Holder, 611 F.3d 90, 97 (1st Cir. 2010))); Daoud v. Barr, 948 F.3d 76, 82-83 (1st Cir. 2020) (refusing to review

---

petition or self-petition and in opposition to the grounds alleged for revocation of the approval."

[14] In Odei, a panel of this court examined a petitioner's argument that he had "recharacterize[d]" on appeal such that it was distinct from what he'd argued to the agency. 71 F.4th at 78 n.1. Concluding the petitioner had never made this particular argument to the agency, the panel confronted the resulting exhaustion problem in conjunction with the Supreme Court's recent exhaustion-related guidance. Id. (citing Santos-Zacaria v. Garland, 598 U.S. 411, 143 S. Ct. 1103, 1108-16 (2023) (holding the administrative exhaustion requirement prescribed by 8 U.S.C. § 1252(d)(1) is not jurisdictional but is instead a claims-processing rule subject to forfeiture and waiver)). Specifically, given that the government had raised the exhaustion requirement (as has happened in our case, too) and because the petitioner never made the same argument to the agency that he was making on appeal (same here), the panel deemed the argument unexhausted and therefore declined to consider it. Id. (citing 8 U.S.C. § 1252(d)(1)).

the unexhausted argument that resulted from a petitioner's attempt "to repackage his argument on appeal" as to an agency misapplying its regulations when "he did not contend before the BIA that the BIA could not rely on the regulations identified by the IJ and the corollary BIA regulation").  We thus do not consider them.[15]

## Final Thoughts

In the law, notice can mean a great many things.  See, e.g., Notice Black's Law Dictionary (11th ed. 2019) (collecting and defining different notice-related concepts, from "advance notice" to "short notice").  There are different types of notice and ways in which notice can be accomplished on the facts of any given case.  To Manguriu's thinking, notice needed to be made as he argues -- upon him, the petitioner, not an attorney Manguriu

---

[15] It's true, of course, that the agency must follow its own regulations.  Manguriu I, 794 F.3d at 122.  Even so, litigants still need to raise regulations-based arguments when urging that the agency misapplied regulations.  See, e.g., Daoud, 948 F.3d at 82-83.  That didn't happen here.

In all events, we note that, as to § 292.4, Manguriu's appellate argument overlooks the salient concession made before the agency that "legally" Manguriu received proper notice "because his attorney had received the notice of intent to revoke and also the revocation," and also his counsel's acknowledgment that USCIS policy prevents service on self-petitioners.

And as to § 205.2, it simply states the fact that a notice requirement exists in revocation proceedings; it's § 1229(a)(2)(A), § 103.2(b), and USCIS policy here that help provide the contours of how to effect notice.  Manguriu I noted § 205.2's fundamental requirement of notice of proceedings to revoke a visa petition, 794 F.3d at 122, but the court did not say § 205.2 somehow controlled the outcome on remand or was "the proper regulation" over § 103.2(b) as Manguriu argues before us (and, to repeat, not below).

- 21 -

didn't think represented him anymore.  Given the discouraging way things shook out for him, we can appreciate why he wishes this to be so.  But "notice" and "personal knowledge" are not the same thing, see Vaz dos Reis, 606 F.3d at 5, and on this record, notice was undertaken and achieved in line with what the applicable statute, regulations, and policy required.

For the foregoing reasons, we dismiss the petition for review.